**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**SELMA DIVISION**

JANET POSEY SMITH,
Plaintiff,

v.

CIVIL DIVISION
CASE NO.: 2:20 - CV- 155

VAUGHAN REGIONAL MEDICAL CENTER,
LLC, a Foreign Limited Liability Company,

Defendant.

_____/

**COMPLAINT**

COMES NOW Plaintiff JANET POSEY SMITH (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, and brings this civil rights action against Defendant VAUGHAN REGIONAL MEDICAL CENTER, LLC for the further described causes of action, and states as follows:

**PARTIES, JURISDICTION AND VENUE**

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1131, 1343 and 1367 for the Plaintiff's claims arising under Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 (hereinafter referred to as the "ADA") and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (hereinafter referred to as the "RA"). Plaintiff is seeking declaratory and injunctive relief, as well as damages for injuries suffered.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this judicial district.

3.  Plaintiff Janet Posey Smith is a resident of Alabama who is deaf and communicates in American Sign Language (hereinafter referred to as "ASL") and is therefore a qualified individual with a disability under the RA and the ADA and is otherwise *sui juris*.

4.  Defendant Vaughan Regional Medical Center, LLC is a Foreign Limited Liability Company registered with the State of Alabama to conduct hospital and related healthcare services. Defendant owns and operates Vaughan Regional Medical Center located at 1015 Medical Center Parkway, Selma, Alabama 36701.

5.  Defendant is a recipient of federal financial assistance, and is, therefore, subject to the requirements of Section 504 of the RA. 29 U.S.C. § 794.

## FACTS

**Facts as to Plaintiff**

6.  Plaintiff is a fifty-one (51) year old resident of Alabama who has lived in Selma for most of her life and at the time of the events giving rise to this action.

7.  Immediately after the events giving rise to this action, Plaintiff temporarily moved to Montgomery, Alabama and is in the search of housing.

8.  Plaintiff maintains close ties to the Selma community because she grew up there, she has family and friends there.  She travels to Selma frequently because of these close ties and because she has had medical treatment there.

9.  Defendant's hospital is the only hospital in Selma.

10. In addition to being born deaf, Plaintiff suffers from anxiety and diabetes.

11. Plaintiff receives government assistance through Medicare.

12. At the time of the incident, Plaintiff resided with her former husband Charlie, who suffered from dementia and who is now deceased.

13. In the past, Plaintiff gave birth to one of her sons in Defendant's hospital.

14. On or about September 19, 2019, at about 4:45 AM, Plaintiff was admitted to Defendant's hospital after a 911 call and after being rushed by an ambulance service to Defendant's hospital with a swollen throat due to an allergic reaction to peanuts.

15. Once admitted to the hospital, Plaintiff spent approximately five (5) days there, during which time she repeatedly asked for an in-live interpreter or a Video Remote Interpreting services (hereinafter referred to as the "VRI").

16. From the time of the admission, Defendant and its staff knew Plaintiff was deaf and required an ASL interpreter or a VRI service or other reasonable means of communication. ASL is not the same as English; it is a language unto itself.

17. During her hospitalization, Plaintiff was required to undergo tests, medical procedures, and Defendant and its staff obtained Plaintiff's signature on numerous forms without effectively communicating with her.

18. During her first encounter with a doctor and nurses in the exam room during her admission to Defendant's hospital, Plaintiff asked for the VRI or an interpreter because she couldn't express her concerns and symptoms while she felt her throat was further swelling. The doctor and the staff ignored her.

19. After Plaintiff repeatedly asked for the VRI or an interpreter, the Defendant's hospital staff explained to her via writing that the VRI was in the supervisor's room on the computer and that the room was locked to prevent theft and that the supervisor was away and thus, the VRI was unavailable.

20. Plaintiff was assisted to the operation room (hereinafter referred to as the "OR") without offering the VRI or an attempt to communicate a purpose of an intended procedure or a diagnosis.

21. In the OR, the nurses tried putting IV needles in Plaintiff's arms and hands, stuck Plaintiff with the needle in multiple places, kept missing the vein and failing to pay attention to Plaintiff's reaction to pain and discomfort.

22. Plaintiff was directed to inhale gas through the mask for anesthesia purposes.

23. Defendant was fully aware that the failure to provide effective communication to Plaintiff would lead to the failure to obtain knowing and informed consent for the procedure.

24. Plaintiff woke up at the intensive care unit (hereinafter referred to as the "ICU") at night, intubated, restrained with the mittens on her hands.

25. The staff repeatedly ignored Plaintiff's cries and gestures for help, showed the signs of annoyance in their facial expressions and yelled at Plaintiff.

26. Plaintiff spent the night and the following morning hours at the ICU intubated, restrained, terrified, with the mittens on her hands.

27. On or about September 20, 2019, Plaintiff was transferred to a regular room, where she was afforded the VRI for the first and the only time during her hospitalization for approximately ten (10) to fifteen (15) minutes.

28. Despite Plaintiff's unanswered questions and requests for further explanations of Plaintiff's treatment, the VRI was taken away from her and given to another patient there.

29. During the remainder of her stay, Plaintiff was visited by Charlie, who had dementia and was not able to interpret for Plaintiff; and their friend John, who wasn't able to interpret for Plaintiff.

30. When John was present in the room, the doctors and/or the nurses communicated Plaintiff's symptoms, diagnosis, her medical history to John rather than to Plaintiff through the VRI.

31. Plaintiff was concerned with the disclosure of her personal and medical information but was too weak and ashamed to fight the situation, in addition to the fact she had no way to communicate.

32. On or about September 23, 2019, Plaintiff was discharged without an explanation or prior notice.

33. Plaintiff has had a high-pitched voice before the hospitalization, which is now gone.

34. Following her discharge, Plaintiff felt weak and sick and the following morning Plaintiff's son took her to Baptist South Regional Hospital in Montgomery, Alabama, where she was treated for fluid in her lungs and diabetes.

35. Since the incident at Defendant's hospital, Plaintiff lost her voice; she has been suffering from discomfort and pain in her throat and will likely require a surgery.

36. Since September 23, 2019, Plaintiff is temporarily staying in Montgomery, Alabama, however, intends to go back to Selma in the next month or so to visit her family and friends; Plaintiff also is looking for housing in Selma.

37. Defendant's hospital is in the close proximity to Plaintiff's former home; Plaintiff visits her family and friends often; and because of her ongoing issues with her throat, diabetes and anxiety, it is certain she will have to return to Defendant's hospital in the near future as it is the only hospital in Selma.

38. The discrimination against Plaintiff was intentional, with reckless disregard, and with deliberate indifference to her protected rights.

39. Plaintiff desires to have efficient reasonable communication with Defendant during her visits to the hospital, including through the VRI or an in-life interpreter or other reasonable means of communication.

40. Plaintiff retained the services of the ADA Group, LLC and the undersigned to represent her in this cause of action.

**Facts as to Defendant**

41. Defendant is a place of public accommodation in that it is a hospital and a provider of medical and healthcare services, employs doctors, nurses and other medical staff, who are Defendant's employees and/or agents, whose actions are attributed to 42. U.S.C. § 12181(7)(F).

42. In order to receive Medicare funding, Defendant is required to certify and recertify its compliance with the civil rights requirements and to develop policies and procedures ensuring that persons who are deaf or have hearing impairments will receive adequate and effective communication.

43. Each time Defendant certifies or recertifies for Medicare funding, it promises it will provide and adhere to such policies.

44. In October 2003, the U.S. Department of Justice promulgated guidelines titled "ADA Business Brief: Communicating with Persons who are Deaf or Hard of Hearing in Hospital Setting," which specifically prohibits the discriminatory actions described herein. U.S. Department of Justice, Civil Rights Division, Disability Rights Section, *ADA Business Brief: Communicating with Persons who are Deaf or Hard of Hearing in Hospital Setting,* (Oct. 2003) available at https://www.ada.gov/hospcombr.htm.

45. Upon information and belief, Defendant failed to implement proper policies and procedures related to the treatment and communication of the patients with hearing impairments.

46. Defendant apparently has VRI capacity for only one person, and it is locked away where it could not be accessed by Plaintiff except once. Although Defendant has access to the VRI, Defendant has failed to train its staff on when and how they must utilize the VRI services in a timely manner.

47. Defendant failed to train its staff on the effective communication with the deaf and hearing-impaired patients, and the VRI machine is not kept readily available for patients with such disabilities.

48. Defendant failed to provide other reasonable and available means of communication to Plaintiff and failed to inform Plaintiff if any other ASL services were available.

## COUNT I
## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 706

49. Plaintiff realleges and reincorporates herein the allegations set forth in Paragraphs 1 through 48.

50. Plaintiff is deaf and this physical impairment substantially limits her major life activities, including her ability to effectively communicate with others who are not fluent in ASL, therefore, Plaintiff is an individual with a disability under the RA, as amended.

51. Defendant is a recipient of federal financial assistance by virtue of Medicare funding participation, as well as other financial assistance.

52. The RA declares that no qualified individual with a disability shall be excluded from participation in or be denied the benefits of the services, programs, activities and otherwise be discriminated against on the basis of his or her disability. 29 U.S.C. § 794.

53. During Plaintiff's five-day hospitalization in Defendant's hospital, the staff had actual knowledge and observed Plaintiff was deaf, noted Plaintiff's numerous requests for the VRI and other attempts to communicate, yet ignored and disregarded Plaintiff's repeated requests for communication, failed to effectively communicate and explain Plaintiff's tests, treatment, and the risk of the procedures.

54. By failing to provide effective communication, Defendant failed to answer Plaintiff's questions, who in turn did not have a real understanding of the course of the treatment and the risk of the procedures during her five-day hospitalization.

55. Because of Defendant's failure to provide effective communication, Plaintiff had an incomplete understanding of what was happening during the admission, in the OR and why she woke up intubated and restrained and was kept intubated and restrained for hours.

56. Plaintiff felt ignored, laughed at, yelled at, frustrated and mistreated.

57. Plaintiff had various forms to sign and to review without the VRI or an interpreter present, and she could not reasonably understand the purposes of the forms, the recommended treatment, the risk of the treatment and the medications and the diagnosis during her hospitalization.

58. Defendant knew Plaintiff was deaf, yet only once during her five-day hospitalization, after Plaintiff's stay in the OR and the ICU, Defendant provided the VRI.

59. Instead of communicating with Plaintiff through the VRI, Defendant communicated and disclosed without Plaintiff's authorization Plaintiff's treatment and medical history and other personal facts to Plaintiff's friend John.

60. Defendant failed to effectively communicate with Plaintiff, accordingly, Defendant discriminated against Plaintiff in the equal treatment in its services and equal use of its facilities and as a result, Plaintiff experienced mental anguish, shame, humiliation and damages in violation of her civil rights.

61. Defendant failed to provide services to Plaintiff as it provides to its similarly situated non-hearing-impaired patients.

62. Defendant lacks policies, practices and procedures as described above, and thus, violated Plaintiff's rights under the RA by discriminating on the basis of her disability.

63. Defendant has discriminated against Plaintiff by failing to provide auxiliary aids and services necessary to ensure effective communication with individuals who are deaf or hearing-impaired, in violation of the RA. 29 U.S.C. § 794.

64. If Defendant, its doctors, nurses, and staff had used the VRI potentially available at all times at the hospital, they would have more likely effectively communicated to Plaintiff her diagnosis, risks associated with the required procedures and medications, as well as the following treatment; they more likely would have effectively communicated with Plaintiff directly without disclosing private and privileged information to her friend; Plaintiff would not have been intubated if she knew the risks of the procedure and the alternatives and had a choice to refuse the procedure; Plaintiff would not have lost her voice.

65. Defendant knew or had reason to believe Plaintiff would be harmed by the failure to provide effective communication.

66. Defendant's actions were intentional, with reckless disregard, with deliberate indifference to the rights and needs of Plaintiff.

67. As a result of Defendant's actions, Plaintiff has been damaged, has sustained injuries and has suffered from emotional suffering, pain, anguish and humiliation.

68. Plaintiff will continue to face discrimination at Defendant's hospital as it is the only hospital in the area.

**WHEREFORE**, Plaintiff Janet Posey Smith respectfully requests this Honorable Court to grant the following relief to Plaintiff: (1) entering a declaratory judgment pursuant to Fed. R. Civ. P. 57, stating that Defendant's policies, practices and procedures have subjected Plaintiff to discrimination in violation of Section 504 of the Rehabilitation Act, (2) permanently enjoining Defendant from discriminatory practices, policies or procedures denying Plaintiff equal access to and benefits from Defendant's services and facilities and equal access to effective communication with Defendant; and (3) awarding Plaintiff damages for the suffered harm. The relief shall require the following:

    a. To cease discrimination against deaf and hearing-impaired patients.

    b. To promulgate, implement and effectuate policies and procedures to ensure that Defendant and its staff do not discriminate against disabled individuals with hearing impairments.

    c. To promulgate, implement and effectuate policies and procedures to ensure that Defendant will provide and pay for the VRI services, or, alternatively, an ASL interpreter, when needed by disabled individuals with hearing impairments in all services offered by Defendant.

    d. To promulgate, implement and effectuate policies and procedures to ensure that Defendant will notify the hearing-impaired patients of their right to effective communication and the

options of communication Defendant offers. Such notice shall include explicit and clearly worded information that Defendant will offer the VRI, the interpreter, and/or other communication services ensuring effective communication with hearing-impaired patients.

e.   To award compensatory damages to Plaintiff.

f.   To award Plaintiff reasonable attorney's fees and costs.

g.   To award any other relief this Court deems just and proper.

## COUNT II
## VIOLATION OF THE TITLE III OF THE AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181, et seq.

69. Plaintiff realleges and reincorporates herein the allegations set forth in Paragraphs 1 through 48.

70. Plaintiff is deaf and this physical impairment substantially limits her major life activities, including her ability to hear and to effectively communicate.

71. Therefore, Plaintiff is an individual with a disability under the Title III of the ADA.

72. Plaintiff meets the essential eligibility requirements for Defendant's services at all times material hereto.

73. Plaintiff will likely return to Defendant's hospital and premises in the next few months when she visits her friends and family members or when she finds housing in the area and will be harmed by Defendant's discriminatory policies and practices.

74. Defendant violated the ADA in numerous ways, including the following discriminatory actions and omissions:

    a.   Failed to maintain policies, practices and procedures to ensure compliance with the ADA, explicitly the ones providing equal access and effective communication to individuals with disabilities. 28 C.F.R. § 36.303(a).

b.  Failed to ensure that communications with Plaintiff were as effective as communications with the non-disabled patients. 28 C.F.R. § 36.303(a).

c.  Failed to provide auxiliary aids and services, including the VRI, a qualified interpreter or other reasonable means of communication, and to modify policies and practices to prevent discrimination against Plaintiff. 28 C.F.R. § 36.303(a); 28 C.F.R. § 36.302(a).

d.  Excluded Plaintiff from services of the place of public accommodation and denied Plaintiff the benefit of these services because of her disability. 28 C.F.R. § 36.202(a).

75. Defendant had knowledge of its obligations under the ADA, however, chose to be deliberately indifferent to Plaintiff's civil rights.

76. Defendant knew Plaintiff would be harmed by its failure to provide the VRI or other reasonable means of communication.

77. As a result of Defendant's discriminatory actions, Plaintiff has suffered injury when she was denied reasonable means of communication during her five-day hospitalization.

**WHEREFORE**, Plaintiff Janet Posey Smith respectfully requests this Honorable Court to enter judgement in her favor, as follows: (1) to declare that Defendant's actions and omissions violated the ADA, (2) to permanently enjoin Defendant from any practices, policies and procedures denying Plaintiff equal access to and benefit from Defendant's services or denying Plaintiff effective communication with Defendant, (3) to enjoin Defendant to make the VRI and/or the ASL interpreter available and accessible to the deaf and hearing-impaired patients; (4) to enjoin Defendant to acquire additional VRI to have it accessible to its deaf or hearing-impaired patients; (5) to award enforcement and other equitable relief to ensure that such training and policies are

maintained in the future, (4) to award Plaintiff reasonable attorneys' fees and costs, and (5) to award any and all other relief this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL ISSUES FOR WHICH A TRIAL BY JURY IS PERMITTED**.

Respectfully Submitted, this 16th day of March 2020.

_____

ANNA ZHUROMSKAYA, ESQ.
Attorney for Plaintiff
ALA. BAR NO. 1646T80
The ADA Group, LLC
4001 Carmichael Road, Suite 570
Montgomery, AL 36106
334.819.4030 p.
334.819.4032 fax.
az@ada-firm.com

_____

L. LANDIS SEXTON, ESQ.
Attorney for Plaintiff
ALA. BAR NO. 5057N71L
ADA Group, LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
Telephone: 334-819-4030
Facsimile: 334-819-4032
Email: LLS@ADA-Firm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of March 2020, I electronically filed the foregoing

with the Clerk of Court by using the CM/ECF system. I certify that service will be accomplished

by a process server on the following party:

Vaughan Regional Medical Center, LLC
c/o C T Corporation System
2 North Jackson St., Suite 605
Montgomery, AL 36104

_____
ANNA ZHUROMSKAYA, ESQ.
Attorney for Plaintiff